**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| PEMBINA NATION LITTLE SHELL )  | |
| BAND OF NORTH AMERICA, *ex rel.* ) | |
| HERMAN A. WESSELMAN, ) | |
| ) | |
|      Plaintiff, ) | |
| ) | |
|      v. ) | Case No. 06-CV-4049-JPG |
| ) | |
| JESSE WHITE, Illinois Secretary of State, ) | |
| JAMES J. EDER, THOMAS O. FINKS, ) | |
| RONALD WILL, and ROBERT RICH, ) | |
| ) | |
|      Defendants. ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

This matter comes before the Court on Herman A. Wesselman's ("Wesselman") Motion for

Temporary Restraining Order (Doc. 3),  Jesse White ("White"), James J. Eder ("Eder") and Ronald

Will's ("Will") Motion to Dismiss (Doc. 4), White, Eder and Will's Motion to Strike (Doc. 6)

Thomas O. Finks ("Finks") and Robert Rich's ("Rich") Motion for Extension of Time to File

Answer (Doc. 8), and Finks and Rich's Motion to Dismiss (Doc. 12).  Wesselman responded to

White, Eder and Will's motions to dismiss and strike and included a motion for summary judgment

in that response (Doc.10).  For the following reasons, the Court will **GRANT** White, Eder and

Will's motion to dismiss, **ABSTAIN** from exercising jurisdiction in this action and **DENY** the

remaining motions as **MOOT**.

**BACKGROUND**

On June 11, 2004, the Pembina Nation Little Shell Band of North America ("Pembina

Nation"), a Native American tribe, sent a letter to then Secretary of State Colin Powell announcing

-1-

its intention to issue license plates, drivers' licenses and passports to its members.  (Doc. 1, ex. E1).

In accordance with its new policy, the Pembina Nation issued Wesselman a license in January 2005;

Wesselman needed this license because Illinois revoked his license after his conviction for driving

while intoxicated.  As a registered member of the Pembina Nation, Wesselman believes his license

is valid and must be respected in Illinois.  Defendants disagree.

On June 30, 2005, Will, an Illinois State Trooper, stopped Wesselman on non-tribal lands

and issued him a citation for driving on a revoked driver's license; Will refused to accept

Wesselman's Pembina license. The citation gave rise to several felony and misdemeanor actions in

state court – see case nos. 05-TR-4571, 05-TR-4572, 05-CF-169 and 05-CM-525.  As a result of

these actions, which Wesselman attempted to remove to this Court, he spent an unspecified amount

of time in jail.  Rich, Deputy Sheriff of Effingham County, issued Wesselman a citation for driving

on a revoked license (again on non-tribal lands) on February 7, 2006.  Like Will, he refused to

recognize the Pembina license.  The state brought several more actions as a result – see case nos.

06-TR-589, 06-TR-590, 06-TR-591 and 06-CF-32.  Wesselman attempted to remove these actions

as well.

Wesselman named Rich and Will as defendants for their failure to recognize the Pembina

license.  He named Finks (Assistant State's Attorney for Effingham County) for prosecuting these

actions, Eder (a state judge in the Fourth Judicial Circuit of Illinois) for allowing them to proceed

in his courtroom and White (Secretary of State of Illinois) for refusing to intervene on his behalf.

Wesselman purports to bring this action himself and on behalf of the Pembina Nation, alleging that

defendants violated their oaths under Article VI of the United States Constitution by failing to abide

by treaties entered into between the United States and the Pembina Nation in the 18th and 19th

centuries.[1]  Specifically, he argues that the Pembina Nation has the authority to implement a motor vehicle plan under these treaties and that they give him the right, as a member of the Pembina Nation, to be tried before Indian authorities by an Indian jury.  Wesselman claims defendants' failure to comply with these provisions has resulted in violations of his and the Nations' rights under the Fourth, Fifth, Sixth, Ninth, Thirteenth, Fourteenth and Fifteenth Amendments.

## ANALYSIS

In his complaint, Wesselman seeks both injunctive and declaratory relief.  He asks the Court to declare that "defendants' acts, policies and practices herein described and complained of violated the rights of the members of the Pembina Nation under the United States Constitution and treaties of the United States" and to enjoin defendants from pursuing the criminal proceedings in state court. In addition, he asks the Court to forbid defendants and their successors and agents from denying the Pembina Nation's treaty rights and to force defendants and others to recognize the Nation's right to operate a motor vehicle plan.  Defendants claim the Court should abstain from exercising its jurisdiction under *Younger v. Harris*, 401 U.S. 37, 41 (1971).  The Court agrees.

Congress' policy has long been to permit state courts to try cases free from the interference of federal courts.  *Younger*, 401 U.S. at 43; 28 U.S.C. § 2283.  Federal courts hesitate to interfere in state proceedings for reasons of comity – expressed in *Younger* as the "proper respect for state functions, a recognition of that fact that the entire country is made up of a Union of separate state governments" and a belief that the federal government "will fare best if the States and their

---

[1]  Wesselman cites the following treaties: the Treaty with the Chippewa – Red Lake and Pembina Bands of 1863, the Treaty with the Delawares of 1778 and the Treaty with the Six Nations of 1784.

institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. Courts also worry that federal intervention in a case like this would be an affront to state sovereignty and raise serious federalism concerns. For these reasons, the Court in *Younger* held that a federal court should not exercise its equitable powers and interfere in state proceedings where an individual has an adequate remedy at law and will not suffer irreparable harm from the denial of the requested relief. *Id.* at 43-44. When seeking to enjoin pending criminal proceedings, one must show not only that the failure to grant the requested relief will result in irreparable injury, but that the threatened injury is "both great and immediate." *Id.* at 46 (internal quotations and citation omitted) ("[T]he threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution."). *Younger* and similar cases clearly stand for the proposition that federal intervention into state criminal proceedings should be limited to the truly extraordinary cases. *See, e.g.,* 401 U.S. at  41; *Pulliam v. Allen*, 466 U.S. 522 (1984); *O'Shea v. Littleton*, 414 U.S. 488 (1974). In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), the Supreme Court established a framework of sorts to determine whether abstention is appropriate. As stated in *Middlesex*, "[w]here vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *Id.* (internal quotations and citation omitted). "So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Id.* at 435. It is also important to note that *Younger* abstention is appropriate when a plaintiff seeks declaratory relief. *Hoover v. Wagner*, 47 F.3d 845, 851 (7th Cir. 1995).

-4-

Vital state interests are necessarily involved in this case.  Without question, Illinois has an exceptionally strong interest in enforcing its criminal laws and in maintaining the safety of its roads and highways.  Without regard to Wesselman's current sobriety, Illinois certainly has the right to keep drunk drivers off its roads.   Similarly, Wesselman has presented no reason why his constitutional claims cannot be adequately resolved in the state courts.  He has filed at least one motion to dismiss based on some of the arguments he has raised in this Court – apparently, he filed the motion to dismiss on the same day he filed the instant action.  It is unclear whether the state court has ruled on this motion.  Even if it has (and ruled unfavorably from Wesselman's point of view), it is not clear why he could not appeal the trial court's ruling.  *See O'Shea*, 414 U.S. at 502; *Middlesex County Ethics Comm.*, 457 U.S. at 432.

In essence, Wesselman has attempted to raise a constitutional defense to his state case in federal court.  This is clearly inappropriate.  The Seventh Circuit has said that "if a person is believed to have violated a state law, the state has instituted a criminal, disciplinary, or other enforcement proceeding against him, and he has a federal defense, he cannot scurry to federal court and plead that defense as a basis for enjoining the state proceeding." *Nader v. Keith*, 385 F.3d 729, 731-32 (7th Cir. 2004) (citations omitted); *see also Hoover*, 47 F.3d at 848 ("[A] person who is being prosecuted by a state for violating its laws is not allowed [under *Younger*] to derail the prosecution by bringing a suit in federal court to enjoin the prosecution on the ground that the state statute on which it is based is unconstitutional.").  Wesselman chose to bring an action in federal court rather than assert his defense in the state criminal proceedings.  He has not shown that he cannot raise the defense in state court (as noted, he raised it on the same day he attempted to remove the state criminal proceedings to federal court) or that the failure of this Court to intervene will result

in irreparable harm that is both great and immediate.  Additionally, there is no indication that the state authorities are harassing Wesselman or acting in bad faith.  Wesselman cannot deny that his conduct violated state law and that Illinois has authority to prosecute him for that violation. *See Nevada v. Hicks*, 533 U.S. 353, 362 (2001) ("It is also well established in our precedent that States have criminal jurisdiction over reservation Indians for crimes committed . . . off the reservation.") (citation omitted).  To the extent the treaties cited in his complaint dictate otherwise – which they almost certainly do not under *Hicks* – the proper method for making this claim is as a defense in the state action.  This is simply not a case exhibiting the exceptional circumstances necessary to justify the intervention he requests. *See Middlesex County Ethics Comm.*, 457 U.S. at 437.

Though there is some support for the notion that *Younger* abstention is inappropriate when the United States or an Indian tribe brings suit to enforce treaties, *see, e.g., United States v. Michigan*, 508 F.Supp. 480 (W.D. Mich. 1980), the circumstances here do not present a need to follow that course. In the first place, this suit was not brought by the United States or an Indian tribe. Though Wesselman purports to sue on behalf of the Pembina Nation, his status as a *pro se* non-attorney litigant forbids him from bringing suit on behalf of anyone but himself. *See United States ex rel. Lu v. Ou*, 368 F.3d 773, 775 (7th Cir. 2004); *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986) (*per curiam*).  Second, the court in *Michigan* felt compelled to act in light of its previous judgment declaring Indian fishing rights under certain treaties. It had to act because it found that a pending state prosecution of several Indians was a "thinly veiled attempt to restrict the rights of . . . those persons whose rights were declared" in its previous order. *Michigan*, 508 F.Supp. at 481-82.  Though this Court recognizes, as did the court in *Michigan*, that "Indians are a people distinct from others," often deserving of different treatment, the factors militating against declining

-6-

jurisdiction in that case are not present here.  *Id*. at 490 (quoting *In re Kansas Indians*, 72 U.S. (5 Wall.) 737, 755 (1866) (internal quotations omitted).  This Court is not called to enforce or effectuate one of its previous orders; it is called to enjoin a criminal prosecution for an offense raising none of the bells and whistles of the prosecution in *Michigan*.  *See Michigan*, 508 F.Supp. at 490.  In any event, other Courts have suggested that abstention is appropriate under the circumstances.  *See Prairie Band of Potawatomie Indians v. Pierce*, 253 F.3d 1234, 1242-43 (10th Cir. 2001).  As vital state interests are involved in the state proceedings, Wesselman has an adequate remedy at law and there is no indication of bad faith, harassment or exceptional circumstances, the Court will abstain from exercising its jurisdiction under *Younger*.  Accordingly, all other motions in this case are moot.

## CONCLUSION

White, Eder and Will's Motion to Dismiss (Doc. 4) is **GRANTED**.  Wesselman's Motion for Temporary Restraining Order (Doc. 3), White, Eder and Will's Motion to Strike (Doc. 6) Finks and Rich's Motion for Extension of Time to Answer (Doc. 8), Finks and Rich's Motion to Dismiss (Doc. 12) and  Wesselman's Petition for Summary Judgment (Doc. 11) are **DENIED AS MOOT**.  The Court **ABSTAINS** from exercising jurisdiction in this case, and hereby **DISMISSES** this action.  Finally, the Court notes that Wesselman's response and motion for summary judgment was docketed twice.  Accordingly, the Court **DIRECTS** the **Clerk of Court** to **STRIKE** (Doc. 10) from the record.  The **Clerk of Court** is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.

Dated: April 25, 2006.

/s/ J. Phil Gilbert
**J. PHIL GILBERT**

-7-

**U.S. District Judge**